```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :    15cv3868 (DLC)
DENARDO COLEMAN as Guardian for          :
ORNETTE COLEMAN,                         :
                  Plaintiff,             :    OPINION & ORDER
                                         :
       -v-                               :
                                         :
SYSTEM DIALING LLC; JORDAN McLEAN;       :
AMIR ZIV; AND JOHN DOES 1-10,            :
                                         :
                  Defendants.            :
                                         :
---------------------------------------- X
```

APPEARANCES:

For Plaintiff:

Brian C. Caplan
Robert W. Clarida
REITLER KAILAS & ROSENBLATT, LLC
885 Third Avenue, 20th Floor
New York, NY 10022

For Defendants System Dialing LLC, et al.:

Justin S. Stern
FRIGON MAHER & STERN LLP
1271 Avenue of the Americas, Suite 4300
New York, New York 10020

Jonathan D. Plaut
COHAN RASNICK MYERSON PLAUT LLP
One State Street, Suite 1200
Boston, MA 02109

DENISE COTE, District Judge:

   Plaintiff Denardo Coleman is the adult son of Ornette

Coleman, a jazz musician and composer.  Plaintiff, as his

1

father's guardian, alleges that defendants have sold and continue to sell unauthorized recordings of performances by Ornette Coleman in violation of federal and state law. Defendants have moved to dismiss the case pursuant to various provisions of the Federal Rules of Civil Procedure, as well as the Federal Arbitration Act, 9 U.S.C. § 1 et seq. For the following reasons, defendants' motion to dismiss is denied to the extent it is predicated on Federal Rule of Civil Procedure 25. Decision on the issue of arbitration is reserved pending discovery.

**BACKGROUND**

These facts are taken from the pleadings and a supplemental declaration by the plaintiff.[1] Plaintiff Denardo Coleman is the adult son and sole heir of Ornette Coleman. In July 2009, the individual defendants Jordan McLean ("McLean") and Amir Ziv ("Ziv") visited Ornette Coleman at his home to participate in live musical performances. McLean and Ziv recorded a number of these performances.

Ornette Coleman's physical health and mental acuity began

---

[1] "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).

2

deteriorating in 2010, and he began limiting his public performances. By late 2011, he was receiving in-home medical care, and from 2012 until his death rarely left his home.

Denardo Coleman was appointed Ornette Coleman's legal guardian on September 21, 2013. He also served as Ornette Coleman's business manager. In 2014, Denardo Coleman became aware that defendants were selling a recording they made of their performance with Ornette Coleman in 2009, apparently without authorization. The plaintiff contacted defendants to demand that they cease selling the recording. When they declined, in his role as his father's guardian, plaintiff commenced this action on May 19, 2015, alleging multiple claims under state and federal law.

On June 9, defendants informed plaintiff, for the first time, that a contract between the defendants and Ornette Coleman was executed on November 28, 2011. Defendants asserted in their July 2 answer to plaintiff's complaint numerous affirmative defenses, including the existence of a contract governing the recordings at issue that contains a binding arbitration clause.

Ornette Coleman died on June 11, 2015. On July 17, plaintiff's counsel notified the Court and opposing counsel of Ornette Coleman's death in a letter motion, filed on ECF, to

3

adjourn the initial pretrial conference.  That letter began,

> We are counsel to plaintiff Denardo Coleman as Guardian for Ornette Coleman in [this] action.  On June 10, 2015, Ornette Coleman died.  Plaintiff intends to substitute a new plaintiff in this case when certain estate matters have been taken care of.

At an initial pretrial conference of July 24, the Court set a tentative deadline of September 25 for amendment of the complaint; the Court requested an update on the status of substitution by that date if the matter was still pending in Surrogate's Court.  On September 25, plaintiff submitted via ECF an update on the substitution of a new plaintiff.  That letter stated that "[t]he necessary documents have been gathered and provided to counsel for the estate, and are expected to be on file shortly."

Defendants moved to dismiss on October 22.  Among other things, they argued that Ornette Coleman "has no standing to maintain this action" because he was not the administrator of Denardo Coleman's estate and that, in any event, the November 2011 contract between the parties requires that any disputes be submitted to arbitration.  The defendants did not argue that the 90-day time period for filing a substitution prescribed by Rule 25, Fed. R. Civ. P., had expired on October 15, 2015.  Plaintiff opposed the motion on November 13, disputing the existence of

the contract and representing that he anticipated receiving letters of administration from the New York Surrogate's Court sometime in December.

On November 17, at a teleconference regarding a separate and unrelated motion to disqualify defendants' counsel, defendants raised a new argument based on standing. For the first time, defendants argued that the plaintiff lacked standing because he had failed to comply with Rule 25, Fed. R. Civ. P., which governs the substitution of plaintiffs. Specifically, the defendants argued that the July 17 letter served as the "statement noting the death" of Ornette Coleman and that the 90-day period prescribed by that Rule had expired on October 15.

The motion to dismiss was fully submitted on November 20. In their reply memorandum filed on that date, defendants elaborated upon their recent Rule 25 argument. Accordingly, on November 30, the Court permitted the parties to brief the issue of whether Rule 25 was applicable to these facts, as well as, if so, whether the plaintiff would be entitled to a deadline extension under Rule 6(b).

On December 1, the plaintiff applied to the Supreme Court of New York County for authority to litigate this action pending his appointment as administrator. The next day the court issued

an ex parte order, pursuant to N.Y. Mental Hygiene Law § 81.21(a)(2), that expanded Denardo Coleman's authority as Guardian in order "to allow the Guardian to continue prosecuting" this action.  The order further provided that the "expanded authority shall continue until an administrator is appointed and qualifies to represent" Ornette Coleman's estate.  On December 4, plaintiff submitted a copy of this order along with his supplemental memorandum of law regarding Rules 25 and 6(b).  Supplemental briefing was completed on December 9.

**DISCUSSION**

Defendants have moved to dismiss the complaint pursuant to both the Federal Rules of Civil Procedure and the FAA.  Because the issue of compliance with Rule 25 is a threshold issue, it is necessary to dispose of it first.

Defendants initially moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing briefly that, because "[o]nly [a decedent's] estate may maintain a legal action," Ornette Coleman "has no standing to maintain this action."  Defendants expanded upon this argument in their reply memorandum of law, grounding their jurisdictional argument instead in Federal Rule of Civil Procedure 25 ("Rule 25").  Rule 25(a)(1) provides that

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A

6

> motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made <u>within 90 days after service of a statement noting the death</u>, the action by or against the decedent <u>must be dismissed</u>.

(Emphasis added.)

Rule 25 "establishes a time limit," which starts running at the "time information of the death is provided by means of a suggestion of death upon the record." <u>Unicorn Tales, Inc. v. Banerjee</u>, 138 F.3d 467, 469 (2d Cir. 1998) (citation omitted).[2] "Mere reference to a party's death in court proceedings or pleadings is not sufficient to trigger the limitations period for filing a motion for substitution," even if "the parties have knowledge of a party's death." <u>Grandbouche v. Lovell</u>, 913 F.2d 835, 836-37 (10th Cir. 1990) (per curiam). Rather, "a party must formally suggest the death of the party upon the record." <u>Barlow v. Ground</u>, 39 F.3d 231, 233 (9th Cir. 1994). The Federal Rules of Civil Procedure provide a form -- Official Form 9 -- for use in such situations. Once triggered by a formal "statement noting the death," the 90-day time period can only be extended by a motion pursuant to Rule 6(b). <u>See</u> <u>Unicorn Tales</u>,

---

[2] When Rule 25(a) was stylistically revised in 2007, the phrase "after death is suggested upon the record by service of a statement of the fact of the death" was replaced by the current text, which omits reference to the term "suggestion of death."

7

138 F.3d at 470-71; see also Fed. R. Civ. P. 25, Advisory Committee Notes: 1963 Amend. ("The motion may not be made later than 90 days after the service of the statement [of death] unless the period is extended pursuant to Rule 6(b).").

On July 17, the plaintiff served, via electronic filing system, a letter motion seeking to adjourn the July 24 initial pretrial conference in light of Ornette Coleman's death. That letter began by memorializing Ornette Coleman's death. This letter is sufficiently formal notice to the Court and defendants of Ornette Coleman's June 11, 2015 death to qualify as the statement of death triggering Rule 25's 90-day substitution period.

Rule 25(a)(1) does not require that such statements include magic words or come in specific forms. That the letter motion was not labeled a "suggestion of death" or "statement of death" or because it failed to use Official Form 4 does not render the notice of death therein impermissibly informal or inoperative. Nor does the fact that the statement of death accompanied a request for adjournment nullify the statement of death; indeed, the death is what prompted the request for adjournment in the first place.

The letter motion was not, as the plaintiff argues here, a

8

"[m]ere reference to a party's death in court proceedings or pleadings," Grandbouche, 913 F.2d at 836; rather, it was a "statement noting the death" of Ornette Coleman, properly served by electronic means, consistent with the terms of Rule 25(a). Accordingly, the plaintiff was required to make a motion to substitute within the next 90 days.[3]

The plaintiff has filed a Rule 6(b) motion seeking to retroactively extend the 90-day deadline.  That motion is granted.  Rule 6(b) provides that a court may, "for good cause," extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).  In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993),

> the Supreme Court set forth four factors to be
> considered in connection with an assertion of
> excusable neglect as justification for a missed

---

[3] Plaintiff makes several additional arguments regarding the July 17 letter motion.  Two arguments -- that the purported statement of death was improperly served by the decedent's attorney and that the statement wrongly failed to identify the formal successor to the decedent's interests -- have been rejected by the Second Circuit.  Unicorn Tales, 138 F.3d at 469-70. Plaintiff's third argument also lacks merit.  He contends that the statement of death was invalid because it was not served on him individually, as non-party successor to Ornette Coleman's estate.  But, the letter was filed by Denardo Coleman's counsel, who represents the plaintiff in his capacity as Ornette Coleman's legal guardian.  No service on the plaintiff in his individual capacity was necessary.

> judicial deadline: (1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith.

In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 129 (2d Cir. 2011) (citation omitted). Courts in this Circuit "focus[] closely on the third Pioneer factor: the reason for the delay." Padilla v. Maersk Line, Ltd., 721 F.3d 77, 83 (2d Cir. 2013). "[T]he ultimate determination depends upon a careful review of all relevant circumstances." In re Am. Exp., 672 F.3d at 129 (citation omitted). "Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness." In re Painewebber Ltd. Partnerships Litig., 147 F.3d 132, 135 (2d Cir. 1998).

The Pioneer factors weigh in favor of permitting an extension. The defendants will suffer no prejudice if the suit is permitted to proceed by substitution of the plaintiff as a guardian authorized by the December 2, 2015 New York Supreme Court order for the plaintiff as a guardian without such authorization. Indeed, the prejudice and delay would be greater under alternative dispositions, such as dismissal of the plaintiff's claims without prejudice to renewal. There is no

10

evidence the plaintiff has acted in bad faith: indeed, he notified the Court and the defendants of his intention to move to substitute, and has been taking steps to do so since July.

Most importantly, a review of the relevant circumstances demonstrates that the plaintiff had "a reasonable basis for noncompliance." In re Am. Exp., 672 F.3d at 129. The plaintiff timely complied with the Court's request for a status update on substitution, and notified the Court on November 12 that he expected to receive authorization from the Surrogate's Court in December. The plaintiff was first apprised of defendants' intention to make an argument based on Rule 25 at a teleconference on unrelated matters on November 17, over a month after the 90-day deadline elapsed. Under these circumstances, the plaintiff has made an adequate showing of excusable neglect.

## CONCLUSION

The plaintiff's motion for an extension of time to file a Rule 25 motion pursuant to Rule 6(b) is granted. Defendants' October 22, 2015 motion to dismiss is denied insofar as it is predicated on the plaintiff's failure to timely substitute. The Court reserves decision regarding the other issues raised in defendants' motion to dismiss.

Dated: New York, New York
December 18, 2015

_____
DENISE COTE
United States District Judge