UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DENARDO COLEMAN as Guardian for ORNETTE COLEMAN,
Plaintiff,

-v-

SYSTEM DIALING LLC, JORDAN McLEAN, AMIR ZIV, AND JOHN DOES 1-10,
Defendants.

15cv3868 (DLC)

OPINION & ORDER

---

APPEARANCES:

For the plaintiff:
Brian C. Caplan
Robert W. Clarida
Brett Van Benthysen
Reitler Kailas & Rosenblatt, LLC
885 Third Avenue, 20th Floor
New York, NY 10022

For the defendants:
Justin S. Stern
Frigon Maher & Stern LLP
1271 Avenue of the Americas, Suite 4300
New York, New York 10020

Jonathan D. Plaut
Cohan Rasnick Myerson Plaut LLP
One State Street, Suite 1200
Boston, MA 02109

DENISE COTE, District Judge:

Before the Court is the defendants' motion to compel arbitration, or in the alternative, to dismiss the complaint. For the reasons that follow, the defendants' motion to compel arbitration is granted.

## Background

### I. Procedural History

On May 19, 2015, Denardo Coleman ("Coleman") filed the instant action alleging claims under the Anti-Bootlegging Act, Lanham Act, New York General Business Law, and common law unfair competition against defendants System Dialing LLC ("System Dialing"), Jordan McLean ("McLean"), and Amir Ziv ("Ziv"). The allegations in the complaint are detailed in the Court's Opinion and Order of December 18, 2015. Coleman v. Sys. Dialing LLC, No. 15cv3868 (DLC), 2015 WL 9275684 (S.D.N.Y. Dec. 18, 2015). In short, Coleman alleges that the defendants have sold and continue to sell unauthorized recordings of performances by his late father and famed jazz musician, Ornette Coleman. Coleman has acted as Ornette Coleman's legal guardian since 2013, and initiated this action in that capacity.

Ornette Coleman died on June 11, 2015. Following litigation over the issue, Coleman's request to be formally substituted as the plaintiff was granted. Coleman v. Sys. Dialing LLC, No. 15cv3868 (DLC), 2016 WL 1169518 (S.D.N.Y. Mar. 22, 2016).

On October 27, the defendants filed a motion to dismiss the complaint on the ground that Coleman's claims were subject to a

written arbitration agreement. Coleman opposed the motion on two grounds: first, that Ornette Coleman lacked the capacity to enter into the agreement, and second, that Ornette Coleman never actually signed the agreement. The Court held that whether a contract containing an arbitration clause was formed is a question properly adjudicated by this Court, but whether Ornette Coleman lacked the capacity to enter into a contract containing an arbitration clause is properly heard by an arbitrator. Coleman, 2015 WL 9275684. Discovery regarding contract formation closed on April 29, 2016.

On May 13, the defendants filed a renewed motion to dismiss or compel arbitration, arguing that all of Coleman's claims are governed by a binding arbitration agreement.[1] The motion became fully submitted on June 3.

## II. The Artist Agreement

The following facts are undisputed.[2] During discovery, the

[1] The defendants also seek an award of attorney's fees under the Artist Agreement's indemnification clause for the plaintiff's purported breach of the Artist Agreement. Because the Artist Agreement includes a binding arbitration clause, that issue must be submitted to arbitration.

[2] "In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment." Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012) (citation omitted).

defendants produced for the first time an agreement (the "Artist Agreement") between Ornette Coleman, McLean, Ziv, and Sound Chemistry Records LLC ("Sound Chemistry").[3] The Artist Agreement, dated November 28, 2011, was drafted by System Dialing's attorney, Justin Stern, and bears the signatures of Ornette Coleman, Ziv, and McLean. McLean signed on behalf of both himself and Sound Chemistry.

Under the Artist Agreement, Ornette Coleman, McLean, and Ziv agreed to work collaboratively to perform and record original music with the ultimate intent to distribute their joint recordings (the "Recordings") through Sound Chemistry. Sound Chemistry provided resources in connection with the Recordings, including use of equipment, advance costs, and aid in preparing the master track recordings. The Artist Agreement provides that Ornette Coleman, McLean, and Ziv jointly own, in equal share, any of the Recordings they create together. It grants Sound Chemistry the exclusive right to administer, control, use, and exploit the Recordings. Specifically, Sound Chemistry has the right, but not the duty, to manufacture, distribute, promote, advertise, sell, lease, license, or

[3] Sound Chemistry Records LLC is the former name of System Dialing.

otherwise exploit commercially the Recordings. In the event Sound Chemistry chooses to market and sell the Recordings, it agreed to pay royalties to Ornette Coleman in the amount of 50% of the net amount actually received, meaning all the proceeds that Sound Chemistry received minus costs associated with manufacturing, printing, distribution, promotion, advertising, video production, website support, social media support, tour support, and any other costs. Ornette Coleman is also entitled to receive royalty payments for any money made by Sound Chemistry for any merchandise related to the Recordings, using the same formula.

Paragraph 14 of the Artist Agreement, titled "Governing Law/Arbitration," provides:

> This Agreement will be governed by, interpreted and construed in accordance with the laws of the State of New York, without regard to principles of conflict of laws. In the event of a dispute by and between any Artist and Sound Chemistry regarding the terms, construction or performance of this Agreement, such dispute shall be settled by binding arbitration in New York, New York, according to the rules of the American Arbitration Association for the settlement of commercial disputes, then in effect. The award or decision resulting therefrom shall be subject to immediate enforcement in a New York court of competent jurisdiction.

At his deposition, McLean testified that he was present when Ornette Coleman signed the Artist Agreement. Specifically,

McLean testified that he read the Artist Agreement out loud to Ornette Coleman, and witnessed Ornette Coleman sign the Artist Agreement. Ziv also testified at his deposition that Ornette Coleman had expressed to him the intention to execute the Artist Agreement. Coleman no longer disputes that Ornette Coleman signed the Artist Agreement. Instead, Coleman now contends that the Artist Agreement lacks consideration because Sound Chemistry's obligations under the Artist Agreement are illusory.

## Discussion

### I. Duty to Arbitrate

Under Section 2 of the Federal Arbitration Act ("FAA")

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA was enacted to counteract "widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). The Supreme Court and Second Circuit have emphasized that the Act "declares a national policy favoring arbitration." See, e.g., Nitro-Lift Technologies, L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012) (citation omitted); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776

F.3d 126, 129 (2d Cir. 2015). Consistent with this policy, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atlantic Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010); see also Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000). In interpreting a validly formed arbitration agreement, [courts] apply a presumption of arbitrability if the arbitration agreement is ambiguous about whether it covers the dispute at hand." Lloyd v. J.P. Morgan Chase & Co., 791 F.3d 265, 269 (2d Cir. 2015) (citation omitted). Disputes concerning the validity or application of a contract containing an arbitration agreement are decided by an arbitrator, "unless the validity challenge is to the arbitration clause itself or the party disputes the formation of the contract." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) (citation omitted).

Here, there is no longer any dispute that Ornette Coleman signed the Artist Agreement, which contains an arbitration agreement. Coleman's sole argument is that the Artist Agreement as a whole lacked consideration, and thus is not an enforceable contract, because Sound Chemistry's obligations were illusory. Accordingly, the Court must determine whether the Artist

Agreement was supported by consideration under New York law. If so, issues relating to the application of the Artist Agreement must be decided by an arbitrator. See Citigroup, 776 F.3d at 129.

The defendants argue that whether the Artist Agreement is supported by consideration goes to the enforceability of the agreement, and must therefore be decided by an arbitrator. The defendants rely on the Court's decision Kuchinsky v. Curry, No. 09cv00299 (DLC), 2009 WL 1492225, at *3 (S.D.N.Y. May 28, 2009). Kuchinsky, however, predates the Supreme Court's decision in Granite Rock Co., which clarified that a court must resolve issues relating to the "formation of the contract." Granite Rock Co., 561 U.S. at 299. Under New York law, the formation of a contract requires five elements: "offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." Kolchins v. Evolution Markets, Inc., 8 N.Y.S.3d 1, 9 (1st Dep't 2015). Absent consideration, no contract is formed. Accordingly, the Court must decide the threshold issue of whether the Artist Agreement was supported by consideration.

## II. Sufficiency of Consideration

Under New York law, "[a]ll contracts must be supported by consideration, consisting of a benefit to the promisor or a

detriment to the promisee." Beitner v. Becker, 824 N.Y.S.2d 155, 156 (2006). Courts do not weigh the relative value of the consideration exchanged because "[u]nder the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." Apfel v. Prudential-Bache Sec. Inc., 81 N.Y.2d 470, 475 (1993). A contract lacks consideration when the obligation of one party is illusory, meaning only one side is bound to perform. See Curtis Properties Corp. v. Greif Companies, 628 N.Y.S.2d 628, 632 (1995). "The courts avoid an interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound." Id.

The Artist Agreement is supported by consideration. Ornette Coleman agreed to grant Sound Chemistry the exclusive right to market his Recordings with McLean and Ziv, of which he had a 33.3% ownership interest. In exchange, Sound Chemistry incurred the obligation to pay royalties to Ornette Colman in the event it earned any money from the sale in excess of its costs. Sound Chemistry also incurred the obligation to pay royalties to Ornette Coleman for any merchandise it sold in

connection with the Recordings. Sound Chemistry also agreed to indemnify Ornette Colman against any damages and expenses arising out of any third party claim against Ornette Coleman resulting from Sound Chemistry's development, production, distribution, and/or exploitation of the Recordings. Finally, both parties mutually obligated themselves to arbitrate disputes concerning the "terms construction or performance" of the Artist Agreement, which is itself sufficient consideration. See Kopple v. Stonebrook Fund Mgmt., LLC, 794 N.Y.S.2d 648 (2005) ("The parties' mutual promises to arbitrate constituted consideration."). Because both Ornette Coleman and Sound Chemistry obtained and gave up something in agreeing to the Artist Agreement, the agreement does not lack consideration. Accordingly, because the parties entered into an agreement with an arbitration clause, Coleman must submit his claims, as well as any challenges to the validity of the Artist Agreement, to arbitration.

Coleman's arguments are unavailing. First, he argues that the Artist Agreement is illusory because it provides that "Sound Chemistry is not required to do any of the undertakings contemplated herein unless Sound Chemistry in its sole discretion decides to do so." Coleman contends that this

provision allows Sound Chemistry to avoid any of its obligations in the Artist Agreement, including any obligation to pay royalties even if it makes money off the Recordings. Coleman's reading of the Artist Agreement is inconsistent with its text. Sound Chemistry's obligation to pay royalties uses mandatory language: "Sound Chemistry will pay Coleman a royalty . . . ." Sound Chemistry has the right, but not the obligation, to market and sell the Recordings, but if it decides to do so, it must pay royalties pursuant to the formula in the Artist Agreement. For that reason, Sound Chemistry's obligations to pay Ornette Coleman under the Artist Agreement are not illusory.

Second, Coleman contends that McLean, during his deposition, agreed that Sound Chemistry had no obligation to pay Ornette Coleman royalties. The testimony at issue is:

> Q: What undertakings could Sound Chemistry decide not to do?
>
> * * *
>
> A: We were not beholden to do any of the work necessary to release the record. Anything that is previously stated, we are not beholden to.
>
> * * *
>
> Q: Is payment of royalties an undertaking?
> A: Yes.
> Q: It is. So Sound Chemistry could, in its sole discretion, can decide not to pay royalties. Is that what the agreement says?
>
> * * *
>
> A: That is what is stated in the contract.

For two reasons, McLean's testimony does not alter the

conclusion that consideration was exchanged. First, McLean's testimony is extrinsic evidence which will not be considered because the pertinent terms of the Artist Agreement are clear and unambiguous. See Osprey Partners, LLC v. Bank of New York Mellon Corp., 982 N.Y.S.2d 119, 120 (2014) ("[W]here the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the document." (citation omitted)). Moreover, in context, McLean's testimony is consistent with text of the Artist Agreement. He merely recognized that Sound Chemistry did not obligate itself to market or sell the Recordings, and if it chose not to do so, it would owe no royalties to Ornette Coleman. He did not testify that Sound Chemistry could ignore its duty to pay royalties in the event it made money off the Recordings.

Third, Coleman argues that Sound Chemistry's obligations are illusory because it is only required to pay royalties to Coleman after subtracting its costs, and that by manipulating those costs, including payments to McLean and Ziv, it could chose to pay Ornette Coleman nothing. This argument is contradicted by the language of the Artist Agreement. After subtracting documented costs, Sound Chemistry is required to pay Ornette Coleman fifty percent of the net amount as royalties,

and may pay royalties to McLean and Ziv in an amount in its discretion, up to fifty percent of the net amount. The defendants, therefore, cannot eliminate Coleman's share of royalties by increasing McLean and Ziv's shares. Finally, to the extent Coleman is arguing that Sound Chemistry could intentionally inflate its costs to deprive Ornette Coleman of royalties, this is not a basis to conclude that the Artist Agreement is illusory because such manipulation would constitute a violation of the covenant of good faith and fair dealing, which is implied in every contract under New York Law. Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011) ("Where the contract contemplates the exercise of discretion, [the implied covenant] includes a promise not to act arbitrarily or irrationally in exercising that discretion.").

Fourth, Coleman argues that the "provisions contained in the [Artist] Agreement diverge greatly from the typical provisions seen in any legitimate record contract, particularly one for an artist of [Ornette] Coleman's historic stature." Specifically, Coleman identifies (1) the fact that Ornette Coleman did not retain the exclusive right to exploit the Recordings, (2) the lack of accounting and audit provisions, and (3) the lack of a promotion and marketing commitment. These

arguments are irrelevant to the issue of consideration because "parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." Apfel, 81 N.Y.2d at 475. Whether the Artist Agreement was a wise business decision from Ornette Coleman's perspective does not alter the conclusion that the agreement was supported by sufficient consideration.[4]

## Conclusion

The defendants' May 15 motion to compel arbitration is granted. This action is stayed pending the outcome of arbitration proceedings.

Dated: New York, New York
June 17, 2016

DENISE COTE
United States District Judge

[4] To the extent Coleman is suggesting that the Artist Agreement is unconscionable, that issue must be decided by the arbitrator. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) (holding that an arbitration provision is enforceable even when party claims the entire contract is unconscionable).